UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

RODNEY G. HAMM                    CIVIL ACTION NO. 08-1710

VERSUS                            JUDGE DOHERTY

TRTB, LLC, ET AL                  MAGISTRATE JUDGE HANNA

## *REPORT AND RECOMMENDATION*

Before the undersigned on referral from the District Judge for report and

recommendation are plaintiff's Motion to Move Case to Admiralty Side of Court

Pursuant to Federal Rule of Civil Procedure 9(h) and have Case Designated as a Non-Jury

Trial (Rec. Doc. 57), and a Rule 12(b)(6) Motion to Dismiss and Alternative Motion for

Summary Judgment by Island Operating Company, Inc. (Rec. Doc. 64).  Both motions

are opposed.

## Background and Argument

Plaintiff Rodney G. Hamm filed suit in this court on November 14, 2008, alleging

he suffered personal injuries on a vessel in June 2007.  According to the allegations of the

complaint, plaintiff, a resident of Florida, filed suit against defendants TRTB, LLC,

Danco Operations, LLC, Island Operating Company, Inc., and Nippon Oil Exploration,

LLC.  Plaintiff alleged he was working for defendants TRTB and/or Danco as a second

captain aboard the M/V Tara Louisa, owned and operated by TRTB and/or Danco, and

was a seaman.  Hamm filed an amended complaint naming Rodan Marine Services II,

1

LLC, as his potential employer and owner/operator of the M/V Tara Louisa.[1]  At the time of the pending motions, the defendants in the litigation were Rodan, the owner/operator of the vessel upon which Hamm was injured as well as his Jones Act employer, and Island Operating, who provided employees to operate the platform.

Plaintiff alleges he suffered personal injuries while on the deck of the M/V Tara Louisa, as follows:

> That in June 2007, petitioner, RODNEY G. HAMM, while aiding in the accomplishment of the mission of the M/V "TARA LOUISA," injured his back, hips and other parts of his body when a cargo basket which had been lowered from SMI (South Marsh Island) Platform 243C onto the deck of the M/V "TARA LOUISA," by an employee of defendant(s) "ISLAND" and/or "NIPPON," caught on the hook of the detached lowered stinger line of the platform crane thereby causing the cargo basket to swing over and crush/pin petitioner between the cargo basket and side of the vessel.[2]

In the complaint, plaintiff asserted the bases of jurisdiction as follows:

> This case is cognizable under the Admiralty and Maritime jurisdiction pursuant to the Jones Act (46 U.S.C.A. § 30104) and General Maritime Law of the United States of America.  Furthermore, this is an admiralty and maritime claim falling within the purview of Rule 9(h) of the Federal Rules of Civil Procedure.  Petitioner elects a non-jury trial.[3]

In answer to plaintiff's complaint, both Rodan and Island requested a trial by jury.[4]

---

[1]*First Supplemental and Amended Complaint Suit Under Jones Act and General Maritime Law* (Rec. Doc. 3), ¶ 4.

[2]*Suit Under Jones Act and General Maritime Law* (Rec. Doc. 1), p. 2, 3.

[3]*Suit Under Jones Act and General Maritime Law* (Rec. Doc. 1), p. 1.

[4]*Answer on Behalf of Rodan Marine Service, II, L.L.C. to Suit Under Jones Act and General Maritime Law* (Rec. Doc. 18), p. 3, ¶ 10; *Answer of Island Operating Company, Inc. to Plaintiff's Original Suit and First Supplemental and Amended Suit Under Jones Act and General Maritime Law* (Rec. Doc. 23), p. 5, "Thirteenth Defense."

In addition, Island specifically answered as follows:

### ELEVENTH DEFENSE

_____Island Operating avers that any claims available to plaintiff are cognizable solely and exclusively under the Outer Continental Shelf Lands Act 43 USC 1331 *et seq.,* and that plaintiff is entitled to no relief pursuant to any allegation set forth herein under Admiralty and Maritime Law or the Jones Act.

### TWELTH DEFENSE

_____Island Operating avers that all claims against it are prescribed pursuant to Louisiana's one year statute of limitations for delictual actions, La. Civ. Code Art. 3492.

### THIRTEENTH DEFENSE

Defendant, Island Operating, denies that Plaintiff is entitled to a designation under Rule 9(h) as to Island Operating and therefore requests trial by jury on all issues herein.[5]

The Clerk of Court set the trial as one before a jury, as requested by defendants, in spite of plaintiff's designation as a non-jury trial under Fed. R. Civ. P. Rule 9(h).[6]   The plaintiff's motion to move the case to the admiralty side of the court and have the case designated a non-jury trial, and Island's motion to dismiss or for summary judgment, based on application of Louisiana's one-year prescriptive period to the claims made against it, followed.

In its motion to dismiss or for summary judgment, Island argues Louisiana law is applicable to Hamm's claims against it, and under Louisiana's one year prescriptive period for tort claims under Louisiana Civil Code Article 3492, Hamm's claims have

---

[5]*Answer of Island Operating Company, Inc. to Plaintiff's Original Suit and First Supplemental and Amended Suit Under Jones Act and General Maritime Law* (Rec. Doc. 23), p. 5.

[6]*Scheduling Order* (Rec. Doc. 30).

prescribed.    Island argues Louisiana law is applicable to Hamm's claims against it because the court has federal question subject matter jurisdiction pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. §1333, *et seq*. (OCSLA), and OCSLA specifically provides the law of the adjacent state, in this case Louisiana, is applicable pursuant to 43 U.S.C. §1333(a).

In its memorandum, Island states "[n]o party to this case has contested Hamm's status as a seaman and a member of the crew of the M/V Tara Louisa."[7]   Island submits the claims against co-defendant Rodan are under the admiralty jurisdiction of the court, and maritime law is applicable to those claims; but, Island argues, as a "pure platform" defendant, the court's jurisdiction over it is solely through OCSLA and Louisiana, not maritime, law is applicable.  Moreover, Island argues, Louisiana law is not inconsistent with federal law, as  Louisiana's one-year prescriptive period is not inconsistent with the three year laches period applied in maritime claims, and is thus applicable to claims brought under OCSLA, citing Chevron Oil Company v. Hudson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

If the court determines Hamm's claims against it are not subject to dismissal under Louisiana law, Island argues it is entitled to a trial by jury as the court's jurisdiction over Island is based on OCSLA, and the Seventh Amendment to the U.S. Constitution

---

[7]*Memorandum of Island Operating Co., Inc. In Opposition to Motion by Rodney G. Hamm to Move Case to Admiralty Side of Court Pursuant to Federal Rule of Civil Procedure 9(h) and have Case Designated as a Non-Jury Trial and in Support of Rule 12(b)(6) Motion to Dismiss and Alternatively Motion for Summary Judgment* (Rec. Doc. 64-1), p. 4.

4

guarantees Island a jury trial on the claims made against it.  Island argues an OCSLA

defendant may demand a jury trial even though there are claims in the litigation present

against a vessel owner that are maritime in nature.  Island argues all of the claims in the

case should be tried to a jury, despite the presence of admiralty jurisdiction and maritime

claims against Rodan, as jury trials are not forbidden in admiralty cases and only one trier

of fact should be used at trial.[8]

In opposition, plaintiff argues Island is subject to admiralty jurisdiction and

maritime law, even though Island is a platform defendant.  Moreover, plaintiff argues he

has designated his claim a maritime claim under Fed. R. Civ. P. 9(h), and Island is not

entitled to a trial by jury.

Hamm argues Island's "entire basis for its argument is flawed," as the relevant law

is Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1995) and Jerome B.

Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 115 S.Ct. 1043, 130

L.Ed.2d 1024 (1995), which are the "bedrock cases" used to determine whether a tort is

maritime, and whether admiralty jurisdiction and maritime law are applicable, or OCSLA

jurisdiction and state law.

Hamm argues admiralty jurisdiction over a tort claim is determined by conditions

of both location and connection with maritime activity.  In this case, he argues, the

---

[8]*Memorandum of Island Operating Co., Inc. In Opposition to Motion by Rodney G. Hamm to Move Case to Admiralty Side of Court Pursuant to Federal Rule of Civil Procedure 9(h) and have Case Designated as a Non-Jury Trial and in Support of Rule 12(b)(6) Motion to Dismiss and Alternatively Motion for Summary Judgment* (Rec. Doc. 64-1), p. 19, citing  referencing Fitzgerald v. U.S. Lines Co., 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963);  Debellefeuille v. Vastar Offshore, Inc., 139 F.Supp.2d 821, 825 (S.D.Tex.2001).

location requirement is met as Hamm, second captain, was injured on a vessel on

navigable water and maritime location is tied to the site of the injury.[9]  Plaintiff, citing

Grubart, argues the connection requirement, which requires the activity at issue to have

the potential to disrupt maritime commerce and to bear a substantial relationship to

maritime activity, is met as injury to a captain of a vessel has a potentially disruptive

impact on maritime commerce[10] and because loading and unloading vessels is a

traditional maritime activity.[11]   Hamm argues it is immaterial that oil and gas production

from a platform is not a traditional maritime activity, as under Grubart, only one

tortfeasor need be engaged in a traditional maritime activity:

> [I]n *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct.
> 1043 (1995) the court made it clear that the Court needs to look only to
> whether one of the arguably proximate causes of the incident originated in
> the maritime activity of a tortfeasor, as long as one as of the putative
> tortfeasors was engaged in traditional maritime activity, the allegedly
> wrongful activity will involve such traditional maritime activity and will

---

[9]*Memorandum of Law in Opposition to Rule 12(b)(6) Motion to Dismiss and Alternative Motion for Summary Judgment Filed by Island Operating Company, Inc.* (Rec. Doc. 71-2), p. 5, referencing West v. Chevron U.S.A., Inc., 615 F.Supp. 377 (E.D.La.1985); Taylor v. Kennedy Engine, Inc., 861 F.2d 127 (5th Cir. 1988).

[10]*Memorandum of Law in Opposition to Rule 12(b)(6) Motion to Dismiss and Alternative Motion for Summary Judgment Filed by Island Operating Company, Inc.* (Rec. Doc. 71-2), p. 6, 7, referencing Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1119 (5th Cir. 1995); Duet v. Falgout Offshore, LLC, 2010 WL 1817766, 4 (E.D.La. 2010); American President Lines, Ltd. v. Green Transfer and Storage, Inc., 568 F.Supp. 58, 59 (D.Ore.1983); White v. U.S., 53 F.3d 43, 47 (4th Cir. 1995); Poret ex rel. Alyson, Seth Poret v. Louisiana Life & Equipment, Inc., 2003 WL 1338726, *2 (E.D.La.2003).

[11]*Memorandum of Law in Opposition to Rule 12(b)(6) Motion to Dismiss and Alternative Motion for Summary Judgment Filed by Island Operating Company, Inc.* (Rec. Doc. 71-2), p. 6, 7 citing Hails v. Atlantic Richfield Co., 595 F.Supp. 948 (W.D.La. 1984); Bias v. Tidewater Marine Service, Inc., 712 So.2d 927 (La.App. 4th Cir. 1993), citing Edynak v. Atlantic Shipping, Inc. Cie. Chambon Maclovia S.A., 562 F.2d 215, 221 (3rd Cir. 1977); Moser v. Texas Trailer Corp., 623 F.2d 1006, 1009 (5th Cir. 1980); Drachenberg v. Canal Barge Co., Inc., 571 F.2d 912 (5th Cir. 1978); Morales v. City of Galveston, 181 F.Supp.202 (S.D.Tex. 1959).

meet the second nexus prong.  Id., at 541.[12]

Plaintiff argues applicable jurisprudence supports a finding that where a Jones Act seaman is injured on a vessel by a land-based tortfeasor, admiralty jurisdiction and maritime law are applicable, not state law.  Plaintiff cites three cases:  Taylor v. Kennedy Engine, Inc., 861 F.2d 127 (5th Cir. 1988), in which plaintiff states a Jones Act seaman was injured on a vessel due to the negligence of a land-based crane operator and court found admiralty jurisdiction and maritime law applicable, not Louisiana law; Parker By and Through Parker v. Gulf City Fisheries, 803 F.2d 828 (5th Cir. 1986), in which plaintiff states the court applied admiralty jurisdiction and maritime law to a claim by a ship captain against a land-based physician for medical malpractice; and Scarborough v. Clemco Industries, 391 F.3d 660 (5th Cir. 2004), where plaintiff states the court found admiralty jurisdiction and maritime law, not OSCLA and state law, were applicable to the claims of a Jones Act seaman against a land-based manufacturer defendant.

Plaintiff emphasizes in Scarborough, the Fifth Circuit, citing Grubart, echoed the rule that only one tortfeasor need be engaged in a traditional maritime activity to meet the second "nexus" prong for admiralty jurisdiction:

> [I]n Grubart, however, the Supreme Court held that "as long as one of the putative tortfeasors was engaged in traditional maritime activity, the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong."  Id. at 541, 115 S.Ct. 1043.  Given that Scarborough's employers were found liable for negligence under the Jones Act, in that the employer failed to provide safe and protective gear, it

---

[12]*Memorandum of Law in Opposition to Rule 12(b)(6) Motion to Dismiss and Alternative Motion for Summary Judgment Filed by Island Operating Company, Inc.* (Rec. Doc. 71-2), p. 2.

is clear that one of the tortfeasors in this case was involved in traditional maritime activity.

Scarborough v. Clemco Industries, 391 F.3d 660, 665 (5th Cir. 2004).[13]

Plaintiff reports the Scarborough court ultimately found admiralty jurisdiction and maritime law, and not OCSLA and state law, were applicable to plaintiffs' claims against defendant manufacturers of sandblasting hoods.

Plaintiff also references a non-reported opinion, Green v. Hornbeck Offshore, Inc., 1995 WL 63084 (E.D.La. 1995), where the court found plaintiff, a Jones Act seaman injured on a vessel while off-loading a tank from an ARCO platform, had lodged maritime claims against the platform defendants and not claims under Louisiana law as framed by ARCO.

In addition, plaintiff argues, this court, in Hails v. Atlantic Richfield Co., 595 F.Supp. 948, 950 (D.C. La. 1984), previously found that tort claims made by a platform worker injured upon a vessel against the platform owner sounded in admiralty and maritime jurisdiction and not in OCSLA and Louisiana law, and the platform owner was not entitled to a trial by jury:

> The plaintiff was injured on navigable waters while performing the traditional activity of unloading a vessel. In addition, the court found admiralty jurisdiction to exist as to the platform owner as well as the other defendants because the plaintiff was unloading the vessel at the request and for the benefit of the platform owner. The court went on to note that, for jurisdictional purposes, "a tort occurs where the impact of the act or

---

[13]See *Memorandum of Law in Opposition to Rule 12(b)(6) Motion to Dismiss and Alternative Motion for Summary Judgment Filed by Island Operating Company, Inc.* (Rec. Doc. 71-2), p. 12.

8

omission produces injury."[14]

Finally, plaintiff cites <u>Strong v. B.P. Exploration & Production, Inc.</u>, 440 F.3d 665 (5th Cir. 2006), where the court found maritime law applicable to claims by a platform worker injured while loading equipment onto a liftboat jacked up next to the platform.

Plaintiff concludes the claims against Island are properly before the court pursuant to its admiralty jurisdiction, maritime substantive law is applicable, and the limitations period is three years and not one as provided by Louisiana law.  Moreover, his Rule 9(h) designation of his claims as admiralty and maritime stand, waiving his Jones Act right to trial by jury.   Therefore, plaintiff argues, Island's motion to dismiss on the basis of prescription should be denied, and Hamm's motion to have the matter set as a bench trial granted.

In response to Hamm's opposition, Island argues the issue is whether admiralty ousts OCSLA, and Island argues much of Hamm's authority does not reflect involvement of an OCSLA defendant.  Island attaches an exhibit outlining plaintiff's authority and dividing it into cases involving an OCSLA situs, and cases not involving an OCSLA situs.  Island argues plaintiff's reliance on <u>Grubart</u> is misplaced as it is not an OCSLA case, and in any case, under Justice O'Connor's concurrence in <u>Grubart</u>, 513 U.S. at 548, the claims against Island should be individually analyzed and maritime law not made applicable to it simply because maritime law is applicable to Rodan.   Island concludes:

---

[14]*Memorandum of Law in Opposition to Rule 12(b)(6) Motion to Dismiss and Alternative Motion for Summary Judgment Filed by Island Operating Company, Inc.* (Rec. Doc. 71-2), p. 15, citing <u>Hails v. Atlantic Richfield Co.</u>, 595 F.Supp. 948, 950 (D.C. La. 1984)(citations omitted).

Island Operating's case promotes Congressional purpose in OCSLA and its predictability for those pure platform contractors assisting in the development of minerals on the Outer Continental Shelf without ever engaging themselves directly in vessel related work.  Hamm promotes a broad brush on admiralty jurisdiction that requires the exclusion of OCSLA in any scenario whereby a party subject to admiralty is involved.[15]

At oral argument, Island asserted more forcefully that it is solely a platform defendant that has nothing to do with vessels or shipping or maritime functions. Moreover, Island argued, plaintiff's authority that admiralty jurisdiction and maritime law are applicable to injuries on vessels caused by land-based tortfeasors is inapplicable to this matter, as OCSLA is an "X" factor, created by Congress, and Congress has determined OCSLA and state law are applicable to "pure" platform parties, not admiralty and maritime law.

## Applicable Law and Discussion

### Rule 12(b)(6) and Summary Judgment Standards

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2007)(internal quotations omitted), quoting Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir.2004).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  In re Katrina Breaches Litigation., 495 F.3d at 205, quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

---

[15]*Memorandum of Island Operating Co., Inc. in Response to Plaintiff's Memorandum of Law and Opposition to Island Operating Co., Inc.'s Rule 12(b)(6) Motion to Dismiss, Etc.*  (Rec. Doc. 72-4), p. 7.

544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough

to raise a right to relief above the speculative level[.]" Id., quoting Bell Atlantic, 127

S.Ct. at 1965.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do[.]"  Bell Atlantic, 127 S.Ct. at 1964-65

(citations, quotation marks, and brackets omitted)(emphasis added).  *See also* Ashcroft v.

Iqbal, 129 S.Ct. 1937, 1950 (2009).

Determining whether a complaint states a plausible claim for relief is, therefore, a

context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.  Ashcroft, 129 S.Ct. at 1950.  While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations.  Id. at 1950.

When there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief.  Id.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's

identification of which facts are critical and which facts are irrelevant.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is

11

material if it "might affect the outcome of the suit under the governing law." Id.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Auguster v. Vermillion Parish School Bd., 249 F.3d 400, 402 (5th Cir.2001).

The relevant facts were alleged in plaintiff's petition and are not in dispute: plaintiff filed suit more than one year after the alleged accident occurred; plaintiff is a Jones Act seaman; plaintiff was injured on the deck of the vessel; the crane is mounted on the platform; and, plaintiff made a Rule 9(h) designation.  Therefore, the matter is ripe for decision.

### *Rule 12(b)(6) Motion to Dismiss and Alternative Motion for Summary Judgment by Island Operating Company, Inc.*

### *Federal Court Jurisdiction*

The parties argue there are multiple bases of subject matter jurisdiction over this

action - the Jones Act, 46 U.S.C. §30104; Admiralty and Maritime, 28 U.S.C. §1333; and the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §1333.[16]

Defendant's motion to dismiss or for summary judgment is based on the applicability of Louisiana's one-year prescriptive period.   Louisiana's prescriptive period is applicable in this case only if Louisiana substantive law applies,  which is possible only if the court has OCSLA jurisdiction.  See Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352, 89 S.Ct. 1985, 23 L.Ed.2d 360 (1969).  Thus, as a preliminary matter, the undersigned must determine whether federal court jurisdiction via OCSLA, which was not asserted by plaintiff, is even present.[17]

*OCSLA Jurisdiction Over Claims Against Island*

For OCSLA to provide a jurisdictional basis for an action, the plaintiff need not specifically assert any claims under OCSLA in the complaint. Nase v. Teco Energy Inc., 347 F.Supp.2d 313, 317 (E.D.La.2004) (citing Tennessee Gas Pipeline v. Houston Cas. Ins. Co., 87 F.3d 150, 154-55 (5th Cir.1996)). OCSLA is applicable if the complaint satisfies its statutory requirements. Id., citing Tennessee Gas, 87 F.3d at 154-55. Therefore, it is irrelevant that plaintiff did not invoke OCSLA jurisdiction in his complaint.

---

[16]Plaintiff alleges he is a resident of Florida, and while defendants' citizenship is not clear, it does not appear any are necessarily citizens of Florida.  Therefore, it is possible this court also has diversity subject matter jurisdiction under 28 U.S.C. § 1332.  However, this has not been asserted or briefed, and does not affect the ultimate recommendation; therefore, it will not be addressed further.

[17]Plaintiff alleged only Admiralty and Maritime jurisdiction pursuant to the Jones Act (46 U.S.C. § 30104) and General Maritime Law, and designated his claim as an admiralty and maritime claim under Fed. R. Civ. P. 9(h).

The Fifth Circuit has explained the scope of OCSLA jurisdiction as follows:

> The jurisdictional grant, contained in 43 U.S.C. §1349(b)(1), is very broad. With exceptions not relevant here, the statute provides that "the district courts of the United States shall have jurisdiction of cases and controversies *arising out of, or in connection with* (A) any *operation* conducted on the outer Continental Shelf which involves *exploration, development, or production* of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter.

Tennessee Gas, 87 F.3d at 154.

The Fifth Circuit uses a "but for" test to determine whether OCSLA provides a basis for federal court jurisdiction.  Simms v. Roclan Energy Services, Inc., 137 F.Supp.2d 73, 734 (W.D.La. 2001), citing Tennessee Gas, 87 F.3d at 155.  "A plaintiff's claims arise under OCSLA if 1) plaintiff's employment furthered mineral development on the Outer Continental Shelf, and 2) plaintiff's injury would not have occurred "but for" his employment."  Simms, 137 F.Supp. 2d at 734, citing Recar v. CNG Producing Co., 853 F.2d 367, 369 (5th Cir. 1988).

It is alleged in the petition and defendant acknowledges in brief that plaintiff was a seaman and was injured on a vessel while backloading or offloading cargo being transferred from the platform via a platform crane to the vessel.  While plaintiff was not employed as a platform worker, his employment as a seaman loading or unloading cargo to and from OCS platforms arguably furthers mineral development on the OCS, and falls into OCSLA's broad jurisdictional grant.  Moreover, but for his employment as a seaman charged with loading cargo from the platform onto the ship, the injury would not have

occurred.  Therefore, the undersigned finds plaintiff's claims against Island fall under

OCSLA's broad jurisdictional grant.[18]

_Admiralty Jurisdiction Over Claims Against Island_

Admiralty jurisdiction is determined by a two part test of (1) location and (2)

connection with maritime activity.  Sisson v. Ruby, 497 U.S. 358, 363, 110 S.Ct. 2892,

111 L.Ed.2d 292 (1990).   "For jurisdictional purposes, 'a tort occurs where the impact of

the act or omission produces injury.'" Hails v. Atlantic Richfield Co., 595 F.Supp. 948,

950 (D.C. La. 1984), citing Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe, 434

F.Supp. 920, 927 (E.D.La.1977).  The Fifth Circuit, in  Taylor v. Kennedy Engine, Inc.,

summarized as follows:

> [T]aylor's injury-and, indeed, the injury to the vessel's ladder rung-occurred
> entirely (and without any land-located component, such as initial contact on
> land) on navigable waters. _The fact that Newman's negligence or the defect
> in its equipment may have occurred on land is thus not decisive_. An
> analogous case is Watz v. Zapata Off-Shore Co., 431 F.2d 100, 109-11 (5th
> Cir.1970), where we sustained admiralty jurisdiction over a somewhat
> similar injury to a pipe fitter working on a vessel docked in navigable
> waters undergoing extensive home port-type structual [sic] repairs ( Id. at
> 107-08). We did so because "[a]lthough the negligence and breach of
> warranty ... occurred on land ... Watz [the plaintiff] sustained his injuries on
> board the NOLA III while it was afloat in navigable waters...." Id. at 110.
> We recently remarked in Parker v. Gulf City Fisheries, 803 F.2d 828 (5th
> Cir.1986), "[w]e have long held that 'so long as the place of the injury ...
> occurs upon navigable waters, the fact that the negligent act may have
> occurred on shore is of no relevance' " to the situs requirement. Id. at

---

[18]The undersigned is aware of a recent case out of this district, Landry v. Island Operating Co., Inc., 2009 WL 3241560 (W.D. La. 2009), where Judge Melancon found OCSLA's situs requirement not met when the alleged negligence occurred on a platform, and the injury occurred onshore.  The court found "[t]he manner in which plaintiff allegedly sustained injury simply bears too indirect and attenuated a relationship to any 'operation' on the OCS for defendants to be allowed to invoke OCSLA." Landry, at *3.  The relationship in this case is not so attenuated.

829-30 (footnote omitted) (quoting from <u>Sperry Rand Corp. v. Radio Corp. of America</u>, 618 F.2d 319, 321 (5th Cir.1980)). See also <u>Smith v. Pan Air Corp.</u>, 684 F.2d 1102, 1111 (5th Cir.1982) ("admiralty jurisdiction has repeatedly been extended to cases in which death or injury occurred on navigable waters even though the wrongful act occurred on land" (footnote omitted)); <u>Sperry Rand</u>; <u>Jig The Third Corp. v. Puritan Marine Insurance Underwriters Corp.</u>, 519 F.2d 171, 174 (5th Cir.1975), cert. denied, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); <u>In re Dearborn Marine Service, Inc.</u>, 499 F.2d 263, 276, 286 (5th Cir.1974), cert. dism'd, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975); <u>Kelly v. Smith</u>, 485 F.2d 520 (5th Cir.1973), cert. denied, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974)(Emphasis added).

<u>Taylor v. Kennedy Engine, Inc.</u>, 861 F.2d 127, 128 (5th Cir.1988).

Thus, the undersigned finds the location test is met in this case.  While any negligence by Island may have occurred on the platform in the operation of the crane, the effect of the alleged negligence, injuries to the plaintiff, occurred on a vessel in navigable water.

The connection test is met when (1)  the type of incident involved has the potential to disrupt maritime commerce and (2) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." <u>Grubart</u>, 513 U.S. at 534, citing <u>Sisson v. Ruby</u>, 497 U.S. 358, 110 S.Ct. 2892 (1990).

In <u>Scarborough v. Clemco Industries</u>, 391 F.3d 660, 665 (5th Cir. 2004), the court found sandblasting activity, when framed as an "injury to a Jones Act seaman due to the negligence of a non-employer," had the potential to disrupt maritime commerce.   In <u>Hall v. Environmental Chemical Corp.</u>, 64 F.Supp.2d 638, 640 (S.D.Tex. 1999), the court found injury to a Jones Act seaman who operated a crane upon a barge on navigable

16

waters one that "has a potentially disruptive impact on maritime commerce in that it could delay the transfer of goods, material, and cargo to and from the barge."

The undersigned finds the injury to Hamm, a Jones Act seaman, alleged to be the second captain aboard the vessel, injured on the deck of his vessel in navigable waters, the type of incident that has the potential to disrupt maritime commerce, as injury to seaman may delay the loading, operation and navigation of the vessel.   Moreover, the loading and unloading of vessels is a traditional maritime activity, and Island, by use of its platform based crane, was either loading or unloading the vessel. Drachenberg v. Canal Barge Co., 571 F.2d 912, 917 (5th Cir.1978); Solano v. Beilby, 761 F.2d 1369, 1371 (9th Cir.1985); Edynak v. Atlantic Shipping, Inc. CIE Chambon Maclovia, S.A ., 562 F.2d 215, 221 (3d Cir.1977).

Even if the loading and unloading of a vessel by means of a platform-based crane is not considered a "traditional maritime activity" from the standpoint of the platform, the Fifth Circuit has expressly elected to follow the majority opinion in Grubart, which holds the "traditional maritime activity" portion of the connection test is met, even by a land-based tortfeasor, when at least one joint tortfeasor was involved in a "traditional maritime activity," as follows:

> Appellants argue, however, that the views expressed by Justice O'Connor in her concurrence in the Grubart decision suggest that this court should not follow the plain language of the majority's decision, but should instead interpret it as permitting federal courts to find that admiralty jurisdiction exists as to a non-maritime party when one of the tortfeasors is involved in maritime activity and the traditional tests for impleader and supplemental jurisdiction are met as to the non-maritime party.  Justice O'Connor's

17

concurrence, which addresses only this issue, is just that-a concurrence and not a part of the majority opinion for a reason. The majority opinion in Grubart stated: "The substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." Id. at 541, 115 S.Ct. 1043. Justice O'Connor's concurrence does not provide this court with a sufficient justification for ignoring the plain language of the Grubart majority. Therefore, the court finds that a substantial relationship to maritime activity exists in this case.

Scarborough, 391 F.3d at 665-666 (footnotes omitted).

The undersigned expressly finds Island, even though a platform defendant, was engaged in this instance in a traditional maritime activity – the back loading of a vessel. However, even if Island's back loading of a vessel is not on its own a traditional maritime activity, co-defendant Rodan was undisputedly involved in a traditional maritime activity, and under Scarborough and Grubart, the substantial relationship to a traditional maritime activity test is met.

Therefore, the undersigned finds, under the tests of Sisson, and Grubart, the court has admiralty jurisdiction over the claims made by Hamm against Island.

.       However, the presence of admiralty jurisdiction does not necessarily negate the applicability of OCSLA or some other basis of jurisdiction being available.  Tennessee Gas, 87 F.3d at 155, referencing Recar, 853 F.2d at 369.  Therefore,  the undersigned finds both OCSLA,  43 U.S.C. §1333(a), and admiralty, 28 U.S.C. §1333, provide jurisdictional bases for Hamm's claims against Island.

18

*Substantive Law*

Having found both OCSLA and admiralty provide bases of jurisdiction, the court must determine the applicable substantive law.  Island argues Louisiana law is applicable under OCSLA's provisions and Hamm argues maritime substantive law is applicable due to the court's admiralty jurisdiction.

A review of the jurisprudence shows neither jurisdictional determination *definitively* determines applicable substantive law.  In Grubart, 513 U.S. at 546, the Supreme Court found land-based defendants were subject to the court's admiralty jurisdiction, but  clarified that admiralty jurisdiction, itself, did not necessarily prohibit the application, in some instances, of state law:

> As noted just above, Congress has already made the judgment, in the Extension Act, that a land-based victim may properly be subject to admiralty jurisdiction. Surely a land-based joint tortfeasor has no claim to supposedly more favorable treatment. . . Contrary to what the city suggests. . . exercise of federal admiralty jurisdiction does not result in automatic displacement of state law. It is true that, "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864, 106 S.Ct. 2295, 2298-2299, 90 L.Ed.2d 865 (1986). . . See East River, supra, at 864-865, 106 S.Ct., at 2298-2299 ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules" (footnote omitted)). Thus, the city's proposal to synchronize the jurisdictional enquiry with the test for determining the applicable substantive law would discard a fundamental feature of admiralty law, that federal admiralty courts sometimes do apply state law. See, e.g., American Dredging Co. v. Miller, 510 U.S. 443, 451-452, 114 S.Ct. 981, 987, 127 L.Ed.2d 285 (1994); see also 1 S. Friedell, Benedict on Admiralty § 112, p. 7-49 (7th ed. 1994).

Likewise, a determination that OCSLA jurisdiction exists does not necessarily

mandate the application of the adjacent state's law, in this case Louisiana.  OCSLA

provides its own "choice of law" rules, as follows:

> (2)(A) To the extent that they are applicable and not inconsistent with this
> subchapter or with other Federal laws and regulations of the Secretary now
> in effect or hereafter adopted, the civil and criminal laws of each adjacent
> State, now in effect or hereafter adopted, amended, or repealed are declared
> to be the law of the United States for that portion of the subsoil and seabed
> of the outer Continental Shelf, and artificial islands and fixed structures
> erected thereon, which would be within the area of the State if its
> boundaries were extended seaward to the outer margin of the outer
> Continental Shelf, and the President shall determine and publish in the
> Federal Register such projected lines extending seaward and defining each
> such area. All of such applicable laws shall be administered and enforced
> by the appropriate officers and courts of the United States. State taxation
> laws shall not apply to the outer Continental Shelf.

43 U.S.C. § 1333(a)(2)(A)

The Fifth Circuit has clarified that for Louisiana law to apply as "surrogate federal

law under OCSLA, three conditions are significant. (1) The controversy must arise on a

situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or

temporarily attached thereto). (2) Federal maritime law must not apply of its own force.

(3) The state law must not be inconsistent with Federal law."  Union Texas Petroleum

Corp. v. PLT Engineering, Inc., 895 F.2d 1043, 1047 (5th Cir. 1990).

Assuming without deciding, due to OCSLA's broad jurisdictional grant, the first

condition is met, even though the actual injury did not occur on the platform.  The third

condition is met, as prescriptive periods of state law have been held applicable to personal

injury actions under OCSLA and not inconsistent with federal law in Chevron Oil

Company v. Hudson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).  Given this

assumption, Louisiana law would be applicable as surrogate federal law, unless federal maritime law is applicable by its own force.

The Fifth Circuit has emphasized that OCSLA and its surrogate law provision is not designed to replace existing maritime law where maritime law is applicable to the dispute, even though the court enjoys OCSLA jurisdiction also.  In <u>Tennessee Gas</u>, 87 F.3d at 154,  the court explained as follows:

> While OCSLA was intended to apply to the full range of disputes that might occur on the OCS, it was not intended to displace general maritime law. . . It is not surprising, therefore, that this court has declared that where OCSLA and general maritime law both could apply, the case is to be governed by maritime law.

The question is whether "federal maritime law applies of its own force."  The Fifth Circuit has clarified that, even where overlapping jurisdiction exists under the general maritime law and OCSLA, general maritime law is applicable by its own force when a maritime tort is alleged:

> The district court may well have both admiralty jurisdiction under the general maritime law and federal question jurisdiction by virtue of OCSLA. As we stated in <u>Laredo</u>, "where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law." 754 F.2d at 1229. *The district court may well conclude that the relationship of the alleged "wrong" in this case to traditional maritime activity is sufficiently strong to characterize the wrong as a maritime tort which requires application of general maritime law*. See <u>Executive Jet Aviation, Inc. v. City of Cleveland</u>, 409 U.S. 249, 253-60, 93 S.Ct. 493, 497-500, 34 L.Ed.2d 454 (1972); <u>Smith v. Pan Air Corp.</u>, 684 F.2d 1102 (5th Cir.1982). But we are not called upon at this time to decide which body of law applies to this case. The district court will make this determination based upon principles articulated in a number of cases that have considered this question including <u>Rodrigue v. Aetna Casualty & Sur. Co.</u>, 395 U.S. 352, 355, 89 S.Ct. 1835, 1836, 23 L.Ed.2d 360 (1969), <u>Smith</u>, 684 F.2d at 1109-10, and <u>Laredo</u>, 754 F.2d at 1229. The

sole question presented to us in this appeal is whether OCSLA invests the district court with original federal question jurisdiction. For the reasons stated above we answer this question in the affirmative.

Recar, 853 F.2d at 369.  (Emphasis added).

The court in Texaco Exploration and Production, Inc. v. AmClyde Engineered Products Co., Inc., 448 F.3d 760, 774 (5th Cir. 2006), evaluating whether maritime law applied "by its own force" to an OCSLA jurisdiction case, found it did not, reasoning "[m]aritime law cannot apply of its own force because there is an insufficient connection between the underlying torts and traditional maritime activity."

Without intending to add to the confusion between jurisdiction and applicable substantive law, the undersigned notes the Fifth Circuit stated as follows:

> The test to determine the existence of a cause of action in maritime tort is identical with that applied to determine jurisdiction in admiralty. The Supreme Court, in Foremost Insurance Company v. Richardson [457 U.S. 668, 673, 102 S.Ct. 2654, 2657, 73 L.Ed.2d 300, 305 (1982)] held that, as indicated in Executive Jet [409 U.S. at 253, 93 S.Ct. At 497, 34 L.Ed.2d at 459] it is requisite to proof of a maritime tort that there be an injury on navigable waters (the traditional "locality" test) and, in addition, that the alleged wrong bear a significant relationship to traditional maritime activity.

May v. Transworld Drilling Co., 786 F.2d 1261, 1265 (5th Cir. 1986).

In Strong v. B.P. Exploration & Production, Inc., 440 F.3d 665, 670 (5th Cir. 2006), the court expressly linked a maritime tort with the application of federal maritime law by its own force in an OCSLA case:  "[b]ecause Strong has alleged a traditional maritime tort, federal maritime law applies of its own force, precluding incorporation of state law under OCSLA and prescribing Strong's claim."  In determining whether Strong

22

had pled a maritime tort, the court used the test for admiralty jurisdiction in <u>Grubart</u>.

In this case, a Jones Act seaman, alleged to be the second captain, was injured on his vessel in navigable waters, while handling cargo loaded from a platform, by a platform crane, onto the deck of the vessel.  The undersigned finds there is a sufficient connection between the tort alleged and a traditional maritime activity - injury to a seaman on a vessel on navigable waters which occurred while loading the vessel – to find maritime law applicable by its own force.  While Island forcefully argues it is a pure, OCS platform defendant who has not in any way availed itself of the rules of admiralty, the fact remains Island was utilizing a vessel on navigable waters as a landing place for cargo that needed to be transported by sea. Without doubt, this activity occurs on a regular, if not daily, basis at this situs.  Thus, the undersigned finds maritime law ousts Louisiana law that would otherwise be adopted by OCSLA in this scenario, and the undersigned will recommend that defendant's motion to dismiss plaintiff's claims on the basis of Louisiana's prescriptive period be denied.

### ***Motion to Move Case to Admiralty Side of Court Pursuant to Federal Rule of Civil Procedure 9(h) and Have Case Designated as a Non-Jury Trial***

Plaintiff specifically designated his claim against Island (and Rodan) as an admiralty and maritime claim and elected a non-jury trial under Fed. Rule Civ. P. 9(h).  Rule 9(h) reads in pertinent part as follows:

> If a claim for relief is within the admiralty or maritime jurisdiction *and also within the court's subject-matter jurisdiction on some other ground*, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated. (Emphasis added).

The undersigned has found that the claims against Island are within the court's admiralty and OCSLA subject matter jurisdiction, and plaintiff has designated, pursuant to Rule 9(h), his claims as admiralty and maritime for purposes of Rule 38(e).

Rule 38 provides the procedural rules governing the right to trial by jury as declared by the Seventh Amendment, and Rule 38(e) specifically excepts admiralty and maritime claims from Rule 38,  which reads in pertinent part as follows:

a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution--or as provided by a federal statute--is preserved to the parties inviolate.

* * *

(e) Admiralty and Maritime Claims. These rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h).

Plaintiff has made his designation under Rule 9(h) that the claims against defendants, including Island, are to be considered admiralty and maritime claims and tried without a jury.  As explained by the court in Hails v. Atlantic Richfield Co., 595 F.Supp. 948, 951 (D.C. La. 1984):

The pleading device embodied in Rule 9(h) was enacted to allow the plaintiff to preserve admiralty jurisdiction, its unique rules, remedies and procedure, including the nonjury trial, when the pleadings show that admiralty jurisdiction and some other basis of jurisdiction exists. Romero v. Bethlehem Steel Corp., 515 F.2d 1249, 1252 (5th Cir.1975). That other basis is most commonly diversity or federal question jurisdiction.

24

In the present case, we have found that the facts alleged by plaintiff establish admiralty jurisdiction over the defendant. This being true, "... (t)he election made available to the pleader pursuant to Rule 9(h) is dispositive ...." Harrison v. Flota Mercante Grancolumbiana, S.A., 577 F.2d 968, 986 (5th Cir.1978); Romero, supra; See also, Alaska Barite Co. v. Freighters, Inc., 54 F.R.D. 192, 194-5 (N.D.Cal.1972); Willis v. Woodson Construction Co. (W.D.La.1983), 593 F.Supp. 464 (W. D. La. 1983)(Order granting Motion to Strike Jury Demand).

Likewise, in this case, plaintiff made his designation under Rule 9(h) and Island has no right to trial by jury.  Therefore, the undersigned will recommend that plaintiff's motion to move the case to the admiralty side of the court under Rule 9(h) and have the matter designated as a non-jury trial be granted.

## Conclusion and Recommendation

While the court enjoys multiple bases of subject matter jurisdiction in this matter, including federal subject matter jurisdiction under OCSLA, under OCSLA's own provisions and Fifth Circuit jurisprudence, federal maritime law is applicable by its own force.  Therefore, Louisiana law is inapplicable to the claims made by plaintiff against platform defendant Island.  Moreover, plaintiff has made a proper designation under Fed. R. Civ. P. Rule 9(h) that this matter be designated one under admiralty and maritime jurisdiction and tried without a jury.  Therefore,

**IT IS RECOMMENDED** that the Rule 12(b)(6) Motion to Dismiss and Alternative Motion for Summary Judgment by Island Operating Company, Inc. (Rec. Doc. 64) be **DENIED** and plaintiff's Motion to Move Case to Admiralty Side of Court Pursuant to Federal Rule of Civil Procedure 9(h) and have Case Designated as a Non-Jury

25

Trial (Rec. Doc. 57) be **GRANTED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Auto. Ass'n., 79 F.3d 1415 (5th Cir. 1996).

Lafayette, Louisiana, this 30th day of July, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)